**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER PRICE, | CASE NO. 3:25-CV-00091-JJH |
| Plaintiff, | JUDGE SARA LIOI<br>UNITED STATES DISTRICT JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| Defendant, | **REPORT & RECCOMENDATION** |

**I. Introduction**

Plaintiff, Jennifer Price ("Price" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"), Period of Disability, and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On November 18, 2021, and December 13, 2021, Price filed applications for Period of Disability, DIB, and SSI, alleging a disability onset date of April 20, 2020, and claiming she was disabled due to bipolar disorder, obsessive compulsive disorder (OCD), depression, and anxiety. (ECF No. 5, PageID #: 259–68). The applications were denied initially and upon reconsideration, and Price requested a hearing before an administrative law judge ("ALJ"). (ECF No. 5, PageID #:

1

146–53). On October 27, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 5, PageID #: 60). On December 22, 2023, the ALJ issued a written decision finding Price was not disabled. (ECF No. 5, PageID #: 35, 53). The ALJ's decision became final on November 18, 2024, when the Appeals Council declined further review. (ECF No. 5, PageID #: 28).

On January 17, 2025, Price filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 6, 8, 9). Price asserts the following assignments of error:

(1) The Administrative Law Judge's finding regarding Plaintiff's residual functional capacity is not supported by substantial evidence as the Administrative Law Judge failed to properly evaluate a treating source opinion for supportability and consistency as required by 20 CFR 404.1520c and 416.920c.

(2) When crafting Plaintiff's RFC, the ALJ failed to properly support her treatment of limitations opined by State agency psychological experts Mary Hill, Ph.D., and Dvid [sic] Dietz, Ph.D.

(ECF No. 6 at 1).

### III. Background[1]

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Price's hearing:

> The claimant alleges limitations resulting from mental health issues … she states restrict her ability to work. She said she last worked in 2016. She had a valid driver's license and was able to drive without restrictions, but her husband was the primary driver. She reported problems with focus, intrusive thoughts on a daily basis, anxiety and depression that interfered with the day, and frustration. She said she did not want to get up or do anything and depression would come

---

[1] Price's appeal relates to an opinion regarding her mental impairments. Because she did not challenge anything regarding his physical impairments, the Court's discussion will relate to his mental impairment records only.

2

and go. She reported she was a little better in the summer because she could go outside …When asked why she used the alleged onset date of disability of April 2020, she said it was when her mental health had worsened. (Hearing testimony).

(ECF No. 5, PageID #: 45).

**B. Relevant Medical Evidence**

The ALJ also summarized Price's health records and symptoms:

[T]he claimant's treatment records indicate that she has only received conservative mental health treatment, which has consisted of medication administration and monitoring. (Exhibits 5F, 16F21F, 22F, 25F). She has not had any intensive treatment, such as inpatient hospitalizations. In fact, the record reflects that except for the occasional medication change, her treatment has been overall consistent. (Id.). Therefore, this level of conservative treatment is generally not consistent with the severity of symptoms the claimant had alleged for this period.

[A]t an April 2020 initial psychiatric evaluation, the claimant reported obsessive thoughts, depression, difficulty accomplishing tasks and focusing, problems sleeping, racing thoughts, and anxiety and denied panic attacks or social phobia, psychosis, or suicidal ideations. (Exhibit 5F/3). It was noted she was currently taking Wellbutrin, Seroquel, Xanax, and Luvox and these medications had been managed by her primary care physician for the last one and a half years. (5F/3-4).

Examination showed she was casually dressed and neat; was pleasant and cooperative; had no psychomotor abnormalities; had a decreased rate of speech; thought was linear and goal directed but at times circumstantial; thought associations were intact; she denied any suicidal ideations, hallucinations, or paranoia; insight and judgment were fair; memory was intact; and attention and concentration were adequate. (5F/7). Medications were adjusted. (5F/8). In May 2020, the claimant reported feeling stable. (5F/11). In November 2020 she stated she had increased financial stress and requested more Xanax. (5F/19). In January 2021 it was noted she seemed to be coping well with current medications and denied side effects. (Exhibit 5F/27). Examination showed she was casually dressed and neat; was pleasant and cooperative; had no psychomotor abnormalities; had a decreased rate of speech; thought was linear and goal directed but at times circumstantial; thought associations were intact; she denied any suicidal ideations, hallucinations, or paranoia; insight and judgment were fair; memory was intact; and attention and concentration were adequate. (5F/31). In April 2021

Luvox was increased due to ongoing situational anxiety mostly from ongoing medical problems with decreased motivation, low mood, and crying spells. (5F/35). In June 2021 she reported intrusive thoughts had decreased with the increased dosage of Luvox. She said she felt depression was more situational due to her physical limitations. (5F/47). In September 2021 her medications were continued. (5F/55).

In April 2022 the claimant reported she did not want medication changes and she said she had situational anxiety and periods of low mood. She had a vacation in Florida and felt a little relaxed and wanted to go back to school or work part-time. She said she had no medication side effects and had good support from her family. (Exhibit 16F/4-5).

In the September 2022 psychological consultative examination, it was noted the claimant reported she last worked in 2016 and had left to raise a grandchild. She said she had also left two jobs because of anxiety and depression. (Exhibit 13F). She reported that she graduated from high school and may have received some special education services in elementary school but did not receive services in later grades. She attended cosmetology school. She said she was able to understand instructions in the past. She reported some difficulty comprehending or following instructions when cutting people's hair. She was able to follow the conversation and respond to direct questions. She relied on the notes she brought in order to answer some questions. She was able to complete verbal reasoning tasks but had difficulties with math calculation tasks. She said she is able to care for herself and her home but pain and low motivation sometimes interfere with task completion. (Id.). The claimant was able to follow the conversation. She did tend to start to answer and trail off before finishing her sentence which sometimes made her responses difficult to follow. There was no indication of word retrieval difficulty. She did not ask that questions be repeated. Her attention and concentration skills are at least marginally adequate. She recalled five digits forward and four digits backward. She was unable to calculate serial sevens and said she is "not good with math." She calculated six iterations of serial threes in 35 seconds. She said she is slow to complete daily tasks due to pain. She takes breaks while completing tasks. Symptoms of depression and anxiety may also lead to decreased attention and concentration skills, low persistence to task, and slower pace when completing tasks. (Id.). The claimant was cooperative and interacted appropriately with this examiner. She did appear withdrawn. She said that she generally got along with others at work in the past. She gets along with her family but reported feeling anxious about her marriage. She is withdrawn and has few friends. There was no indication of significant anger control difficulty. The claimant responded appropriately during this

>   exam, even while discussing past and current difficulties. She did appear anxious about providing correct or thorough information to questions. She reported no difficulty managing work-related stress in the past. There was no indication of impulsivity or anger control problems. She was able to identify strategies for managing stress. Work pressure may increase depressive or anxious symptomology including tearfulness, withdrawal from others, slowed work performance, and poor frustration tolerance. (Id.). Diagnosis was major depressive disorder and OCD. (Id.).
>
>   In November 2022 she was started on a trial of Vistaril as she reported bad thoughts, staying home most of the day, and trouble understanding simple instructions. (Exhibit 16F/20-22). In April 2023 she was treated with Vistaril and Strattera. (Exhibit 21F/33). In June 2023 the claimant reported sleep was good and denied mood swings. She reported trouble staying focused so medications were adjusted. (21F/18-23). Examination showed she was casually dressed and neat; was pleasant and cooperative; had a decreased rate of speech; thought was linear and goal directed but at times circumstantial; thought associations were intact; she denied any suicidal ideations, hallucinations, or paranoia; insight and judgment were fair; memory was intact; and attention and concentration were adequate. (21F/23-24).

(ECF No. 5, PageID #: 45–49).

**C. Opinion Evidence at Issue**

    **1. Medical Source Statement of Dr. Shymala Bheemisetty**

In May 2023, Claimant's treating psychiatrist, Dr. Shymala Bheemisetty completed a medical source statement regarding claimant's limitations. (ECF No. 5, PageID #: 889–91). Dr. Bheemisetty indicated that Claimant is "Slightly Limited" in the following areas: the ability to understand, remember and carry out short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (ECF No. 5, PageID #: 890). "Slightly Limited" is defined as "effects of [her] mental disorder interfere with but do not prevent

5

consistent and useful performance of these activities." *Id.*

Moreover, Dr. Bheemisetty indicated that Claimant is "Moderately Limited," meaning that "[the] effects of mental disorder *occasionally* prevents the ability to perform the activity or function in a work setting" in the following areas: the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, and the ability to remain on task to complete simple and repetitive tasks for uninterrupted two hour periods of time, without breaks. *Id*. (emphasis added). Notably, "occasionally" is defined as occurring between 25% to 33% of the time. *Id.* Finally, Dr. Bheemisetty indicated that claimant's impairments may cause Claimant to be absent from work, about three days per month including leaving early or arriving late. *Id*. The ALJ found this opinion partially persuasive. (ECF No. 5, PageID #: 50). Price challenges the ALJ's evaluation of this opinion.

2. **State agency psychological experts Mary Hill, Ph.D. and David Dietz, Ph.D.**

In September 2022, State Agency psychological expert, Mary Hill, Ph.D., determined that Claimant was moderately limited in the following "B" Criteria of the listings, "[Claimant's ability to] understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, adapt or manage oneself." (ECF No. 5, PageID #: 104). Moreover, Dr. Hill found Claimant was moderately limited, "[in her] ability to understand and remember detailed instructions" and "[in her] ability to respond appropriately to changes in the work setting." (ECF No. 5, PageID #: 107–08). Furthermore, Dr. Hill determined that Claimant was not significantly limited in, "[t]he ability to remember locations and work-like procedures." (ECF No. 5, PageID

6

#: 107). Finally, Dr. Hill found no evidence of a limitation in, "[Claimant's] ability to understand and remember very short and simple instructions." (ECF No. 5, PageID #: 107).

However, Dr. Hill found no evidence of a limitation in Claimant's "ability to be aware of normal hazards and take appropriate precautions" or "[Claimant's] ability to travel in unfamiliar places or use public transportation." *Id.* Dr. Hill determined that Claimant was not significantly limited in her, "ability to set realistic goals or make plans independently of others." *Id.* Finally, Dr. Hill indicated that Claimant is "[c]apable of completing tasks in a static environment in which changes are infrequent and well explained." *Id.* Upon reconsideration, State agency psychological expert David Dietz, Ph.D. reviewed the record and Dr. Dietz agreed with Dr. Hill's assessments of the Paragraph B Criteria and agreed with Dr. Hill's entire Mental Residual Functioning assessment. (ECF No. 5, PageID #: 127). Price challenges the ALJ's evaluation of these opinions.

**IV. The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: osteoarthritis, depression/bipolar disorder, peripheral neuropathy; anxiety; obsessive compulsive disorder ("OCD"); left elbow epicondylitis; right and left foot- status post multiple surgeries with hardware placement/adjustment (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; cannot crawl; can occasionally crouch and stoop; can frequently handle and finger with the bilateral upper extremities; can understand, remember and carry out simple instructions; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can occasionally interact with the public, coworkers and

7

supervisors; and can deal with occasional changes in a routine work setting.

(ECF No. 5, PageID #: 40–45).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404,

Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    **C. Discussion**

        Price raises the following two issues on appeal:

> (1) The Administrative Law Judge's finding regarding Plaintiff's residual functional capacity is not supported by substantial evidence as the Administrative Law Judge failed to properly evaluate a treating source opinion for supportability and consistency as required by 20 CFR 404.1520c and 416.920c.
>
> (2) When crafting Plaintiff's RFC, the ALJ failed to properly support her treatment of limitations opined by State agency psychological experts Mary Hill, Ph.D., and Dvid [sic] Dietz, Ph.D.

(ECF No. 6 at 1).

    **1. The Administrative Law Judge did not properly evaluate Dr. Bheemisetty's medical opinion for supportability and consistency.**

        At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight,

9

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard*, 2023 U.S. Dist. Lexis 159761, at *5 (citations omitted). The Social Security regulations define these factors:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 20 C.F.R. § 416.920c(c)(1)-(2).

"Social Security regulations require ALJs to always explain their consideration of supportability and consistency when assessing a medical opinion. In practice, this means that an ALJ must analyze the medical record in the context of supportability and consistency somewhere in his decision; after he performs that analysis of the medical record once, he need not reproduce it every time he discusses a new medical opinion." *Woodard*, 2023 U.S. Dist. LEXIS 159761, at *7–8. "Although the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning,

10

scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, 2024 U.S. Dist. LEXIS 229225 at *22–23 (N.D. Ohio 2024).

"The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021). "Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." *Id.* Summarization of the medical record including both supportive and contradictory information is not, itself, sufficient to explain the ALJ's reasoning or to "provide sufficient rationale for a reviewing adjudicator or court." *Whalen v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 96552 at *19 (citing *Hardy*, 554 F. Supp. 3d at 909; *Warren I. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 42246, 2021 WL 860506, *8 (N.D.N.Y. 2021)).

    a. **The ALJ Properly Considered Supportability and Consistency of Dr. Bheemisetty's Opinion regarding Absenteeism.**

        i. **Supportability**

The supportability factor requires an ALJ to evaluate the relevance of "objective medical evidence and supporting explanations presented by a medical source ... to support his or her medical opinion(s) ...." 20 C.F.R. §§ 1520c(c)(1).

Claimant alleges that the ALJ failed to address the supportability of Dr. Bheemisetty's opinion. (ECF No. 6 at 9). The Commissioner argues that the ALJ addressed the supportability of Dr. Bheemisetty's opinion by noting that it was ... partially supported by "the medical evidence of record." (ECF No. 8 at 9).

The ALJ found Dr. Bheemisetty's opinion to be partially persuasive. She reasoned:

> In May 2023 the claimant's psychiatrist completed a form and opined the claimant had mild to no more than more limitations [sic.] in mental health functioning but would be absent from work about

11

> 3 days per month. (Exhibit 19F). This opinion is *partially persuasive* as it is partially consistent with and supported by the medical evidence of record. The record shows the claimant has no more than moderate limitations. (Exhibits 5E & 8E and 13F). However, the record does not support that the claimant would miss 3 days of work per month. The claimant reported she quit her last job to care for her grandchild, she was able to travel to Florida with her husband and assist him with his business, and she was able to drive and complete her personal care tasks.

(emphasis added) (ECF No. 5, PageID #: 50). Price argues that in evaluating Dr. Bheemisetty's opinion, "the ALJ seemingly determined that the doctor's opinion about absenteeism was not supported by the record, but that the balance of the opinion was consistent with and supported by the medical evidence of record. The only portion of the opinion that the ALJ seems to have disputed was that portion related to missing three days of work per month." (ECF No. 6 at 9). This Court agrees with the Commissioner that the ALJ's explanation contains the necessary level of specificity regarding the doctor's opinion about absenteeism. The ALJ considered Dr. Bheemisetty's medical opinion that Price would be absent three days per month due to her mental limitations and determined that this accommodation was not supported by Price's mild to moderate limitations. (ECF No. 5, PageID #: 50). Moreover, Dr. Bheemisetty's opinion does not contain specific support regarding how she determined the three days per month absence. (ECF No. 5, PageID #: 890). Thus, the ALJ's determination that the "record does not support that the claimant would miss 3 days of work per month" is supported by substantial evidence. (ECF No. 5, PageID #: 50).

      ii.      **Consistency**

The ALJ also applied proper legal standards in expressing her evaluation of Dr. Bheemisetty's opinion as to Claimant's absenteeism in relation to the record evidence. The ALJ's determination that Bheemisetty's opinion was partially persuasive was based on a finding that her opinion as to Claimant's absenteeism was inconsistent with the evidence of the record. (ECF No.

12

5, PageID #: 50). Claimant alleges that the ALJ failed to address the consistency of Dr. Bheemisetty's opinion. (ECF No. 6 at 9). However, the ALJ's decision contained a specific explanation for why Dr. Bheemisetty's opinion regarding absences was inconsistent with the record evidence. 20 C.F.R. § 404.1520c(b)(2). The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). In the ALJ's analysis of Dr. Bheemisetty's opinion, she wrote that, "the record does not support that the claimant would miss 3 days of work per month." (ECF No. 5, PageID #: 50).

Moreover, an ALJ's determination must be read as a whole. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion evidence where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion). Here, the ALJ adequately considered the consistency of Dr. Bheemisetty's opinion as to the absences. The ALJ states that she finds the opinion "*partially persuasive* as it is partially consistent with ... medical evidence of record ... [h]owever, the record does not support that the claimant would miss 3 days of work per month." (ECF No. 5, PageID #: 50) (emphasis added). These general statements alone do not contain the level of specificity desired by the regulations. Yet, after an examination of the medical evidence of record and the decision as a whole, this Court can trace the path of the ALJ's reasoning in her determination that Dr. Bheemisetty's opinion as to absences was partially inconsistent with the totality of the evidence.

The ALJ provided additional medical evidence to demonstrate the opinion's lack of consistency, "[t]he claimant reported she quit her last job to care for her grandchild, she was able to travel to Florida with her husband and assist him with his business, and she was able to drive and complete her personal care tasks." (ECF No. 5, PageID #: 50). Furthermore, as noted by the

13

Commissioner, the ALJ addressed the content of Dr. Bheemisetty's opinion regarding Price's mental limitations in evaluating the paragraph B criteria, "[t]here was no indication of impulsivity or anger control problems. She was able to identify strategies for managing stress." (ECF No. 5, PageID #: 44). The ALJ also discussed "the medical evidence of record" earlier in the decision, specifically, "when evaluating the paragraph B criteria, the ALJ discussed Dr. Bheemisetty's treatment records and noted that Plaintiff had an intact memory, adequate attention and concentration, a linear and goal-directed thought process that at times was circumstantial and was described as cooperative." (ECF No. 8 at 9).

The ALJ further considered Dr. Bheemisetty's opinion when summarizing Claimant's medical symptoms, treatment notes, and symptoms, earlier in the opinion:

> In the September 2022 psychological consultative examination, it was noted the claimant reported she last worked in 2016 and had left to raise a grandchild. She said she had also left two jobs because of anxiety and depression. (Exhibit 13F).

(ECF No. 5, PageID #: 48–49). Thus, the consistency factor as to Dr. Bheemisetty's opinion regarding absenteeism is established. The ALJ considered Claimant's statements, other provider's opinions, and provided a logical bridge between her conclusions, the provider's evidence, and additional evidence of the record.

   b. **The ALJ failed to consider the Supportability and Consistency of Dr. Bheemisetty's opinion as to the Off-Task Limitation.**

As stated above, the ALJ specifically addressed the supportability and consistency of Dr. Bheemisetty's medical opinion regarding Claimant's absenteeism. ("[T]he record does not support that the claimant would miss 3 days of work per month") (ECF No. 5, PageID #: 50). However, as Claimant notes and this Court agrees, the ALJ failed to make clear if she considered the portion of the medical opinion concerning Claimant's off-task limitations when formulating the RFC. (ECF No. 5, PageID #: 50).

14

In her Medical Source Statement, Dr. Bheemisetty indicated that Claimant is "Moderately Limited," in her ability to "complete a normal work-day and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and "remain on task to complete simple and repetitive tasks for uninterrupted two hour periods of time without breaks." (ECF No. 5, PageID #: 890). "Moderately Limited" means "[the] effects of mental disorder occasionally prevents the ability to perform the activity or function in a work setting." (ECF No. 5, PageID #: 890). Pursuant to the Medical Resource Statement, "occasionally" is defined as occurring 25% to 33% of the time. *Id.*

However, Dr. Bheemisetty's opinion left blank the subsequent question asking,

> How often is your patient likely to be "off task" as a result of their psychological impairment? That is, what percentage of the typical workday would your patient's symptoms be severe enough to interfere with attention and concentration needed to perform even simple work tasks? 0%, 5%, 10%, 15%, 20%, 25% or more.

(ECF No. 5, PageID #: 891).

Moreover, Claimant contends that the ALJ's analysis of the medical opinion as to the off-task limitation is insufficient:

> [a] plain interpretation of Dr. Bheemisetty's opinion reveals that the doctor believed that from 25% to 33% of the time, Plaintiff would be unable to maintain a normal work schedule without an unreasonable number and length of rest periods, and that from 25% to 33% of the time she would be unable to remain on task for two hour periods of time without breaks, even for simple and repetitive tasks. (citation omitted).

(ECF No. 6 at 9–10). This Court need not address this discrepancy or determine what percentage of "off task" time that Dr. Bheemisetty's opinion meant to indicate. Regardless of the specific amount of time Dr. Bheemisetty meant to opine that Claimant would be off task, Dr. Bheemisetty's limitation indicated that Claimant would be "off task" for some amount of time and it is unclear whether the ALJ considered this in her formation of the RFC. (ECF No. 5, PageID #:

15

890).

Furthermore, reading the ALJ's determination as a whole, the ALJ did not discuss Dr. Bheemisetty's off-task limitation. *Emard*, 953 F.3d at 844, 851-52. The ALJ considered the state agency psychological consultants' opinions that, "[Claimant has] moderate limitations in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself." (ECF No. 5, PageID #: 50).

The ALJ also considered Claimant's moderate limitations in the four functional areas. This includes moderate limitations in,

> Understanding, remembering, or applying information refer[s] to the abilities to learn, recall, and use information to perform work activities, such as understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions…. Concentration, persistence, or pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.

(ECF No. 5, PageID #: 42-43). This Court recognizes that an ALJ is not required to discuss every piece of evidence. *Weekly v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-2108, 2015 WL 45529, at *8 (N.D. Ohio Jan. 2, 2015) (citing *Thacker v. Comm'r of Soc. Sec.,* 99 F. App'x 661, 665 (6th Cir. 2004)). That said, the ALJ must explain her conclusions enough for a reviewing court to trace the path of her reasoning. *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01748-DAC, 2024 WL 3638702, at *19 (N.D. Ohio Aug. 2, 2024) (citing *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 WL 9064960, at *10, (N.D. Ohio Dec. 14, 2023) (citations omitted), *report and recommendation adopted*, 2024 WL 37877 (N.D. Ohio Jan. 3, 2024)).

Moreover, Claimant asserts that Dr. Bheemisetty's off-task limitation is work preclusive and therefore remand is appropriate. (ECF No. 6 at 10). This contention is correct. This was not harmless error given the vocational expert's testimony that "employers will allow up to ten percent off task. Anything more than that is work preclusive." (ECF No. 5, PageID #: 42–43). *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (the ALJ "may not ignore evidence that does not support his decision"); *Russ v. Comm'r of Soc. Sec.*, No. 1:20-CV-1838, 2021 WL 3709916, at *10 (N.D. Ohio Aug. 20, 2021) (remanding where the ALJ failed to address a limitation that would have been work preclusive). Thus, remand is necessary to allow appropriate consideration of the evidence and a proper application of the regulations and to reassess the RFC.

The ALJ failed to follow agency rules and regulations by failing to properly address the supportability and consistency of Dr. Bheemisetty's entire opinion. *See* 20 C.F.R. § 404.1520c(c). The ALJ's failure to discuss Dr. Bheemisetty's Off-Task Limitation did not build an accurate and logical bridge between the evidence and her conclusion that Dr. Bheemisetty's opinion was partially persuasive as it is partially consistent with and supported by the medical evidence of record. *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (citing *Fleischer*, 774 F. Supp. 2d at 877); *see also Wilson v. Comm. of Soc. Sec.,* 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

The ALJ's error is not harmless because, without fuller explanation, this Court cannot engage in meaningful review of the ALJ's decision. *Blakley v. Commr. Of Social Sec.*, 581 F.3d

399, 409 (6th Cir. 2009). The fact that the ALJ's ultimate conclusion may be supported by substantial evidence, is not enough. *See Blakley*, 581 F.3d at 410 (stating that substantial evidence does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2)). Accordingly, remand is necessary.

Having determined that remand is necessary to properly analyze Dr. Bheemisetty's medical opinion in accordance with 20 C.F.R. § 404.1520c(c) this Court does not address Price's remaining arguments.

### VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: October 23, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).